IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CLARENCE MARTIN, <br> TDCJ #01640933, <br> Petitioner, <br> VS. <br><br> LORIE DAVIS, Director, Texas <br> Department of Criminal Justice, <br> Correctional Institutions Division, <br><br> Respondent. | § § § § § § § § § § § § | CIVIL ACTION NO. 3:16-CV-198 |

## MEMORANDUM OPINION AND ORDER

The petitioner, Clarence Martin (TDCJ #01640933), seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court conviction. The Court ordered Martin to show cause why his petition should not be dismissed as time-barred (Dkt. 7). Martin has argued, both in his petition and his response to the Court's show cause order, that he is entitled to equitable tolling (Dkt. 1 at p. 13; Dkt. 10). The Court will not apply equitable tolling and will dismiss the petition as barred by the statute of limitations.

I. **BACKGROUND**

Martin was convicted in 2010 of aggravated assault with a deadly weapon. Martin's retained trial counsel also handled the direct appeal; and on appeal he argued, as relevant to this petition, that evidence of Martin's affiliation with the Aryan Brotherhood (which was offered by the State partly to show motive for the assault—the victim was African-American—and partly to establish Martin's identity as the attacker through

distinctive Aryan Brotherhood tattoos) was inadmissible at trial. The Thirteenth Court of Appeals of Texas affirmed his conviction, along the way holding that Martin's counsel had failed to preserve an objection to the Aryan Brotherhood evidence under Texas Rule of Evidence 403.[1] The Texas Court of Criminal Appeals ("TCCA") issued a final ruling denying review on December 9, 2011. *See Martin v. State*, No. 13-10-00365-CR, 2011 WL 2937423 (Tex. App.—Corpus Christi July 21, 2011, pet. ref'd); *see also* Texas Court of Criminal Appeals Case Number PD-1316-11.

According to his show cause response, Martin knew as soon as his direct appeal was complete that he wanted to challenge the adequacy of his trial counsel's representation in a habeas proceeding, and he "began requesting his trial record to perfect errors regarding ineffective assistance at trial" (Dkt. 10 at p. 2). Martin wrote to the state trial court several times, and to a state appellate court (Martin does not say which court) once, over the years between 2012 and 2015 requesting the trial transcript and was unable to procure it (though Martin mentions the possibility that some responses were confiscated) (Dkt. 10 at p. 2). Martin also requested the trial transcript from his trial counsel several times between 2012 and 2015 and got repeated assurances from his trial counsel that the transcript would be sent (Dkt. 10 at pp. 2–3). Those assurances proved empty until Martin finally received the transcript from his counsel in May of 2015 (Dkt. 10 at p. 3). Martin filed a state habeas petition on July 21, 2015, and that petition was

---

[1] Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

denied on March 2, 2016 (Dkt. 10 at p. 4). *See* Texas Court of Criminal Appeals Case Number WR-84,392-01. Martin filed this federal habeas petition on July 19, 2016 (Dkt. 1 at p. 14).[2]

As has been his intention since the conclusion of his direct appeal, Martin argues in this petition that his counsel provided ineffective assistance at trial (Dkt. 1 at pp. 6–11). Specifically, he argues that his counsel failed to object when a juror became unfit to serve; failed to preserve the 403 objection mentioned above; failed to challenge the State's serologist and DNA expert; failed to obtain his own DNA expert; and abandoned a defense theory suggested by Martin that the victim's identification of Martin as the attacker could be impeached with evidence that the victim's blood tested positive for multiple hallucinogenic drugs (Dkt. 1 at pp. 6–11).

## II. THE ONE-YEAR STATUTE OF LIMITATIONS

This federal habeas petition is subject to the one-year limitations period found in 28 U.S.C. § 2244(d). *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998). Section 2244(d) provides as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[2] This petition is deemed filed on the date on which Martin deposited it into the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013). The Court is assuming that Martin deposited this petition into the prison mailing system on the date on which he signed it.

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Essentially, subsections (B), (C), and (D) outline exceptions to the general rule, set forth in subsection (A), that a federal habeas petition must be filed within one year after the petitioner's conviction becomes final. *Flanagan*, 154 F.3d at 198. Section (d)(2) tolls limitations during the pendency of a properly filed state habeas petition. *Id.*

Although the statute of limitations is an affirmative defense, district courts may raise the defense *sua sponte* and dismiss a petition prior to any answer if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court[.]" *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) (quoting 28 U.S.C. foll. § 2254 Rule 4). A district court may dismiss a petition as untimely on its own initiative where it gives fair notice to the petitioner and an opportunity to respond. *Day v. McDonough*, 547 U.S. 198, 209–10 (2006).

When a habeas petitioner has, as Martin did, pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, which is the expiration of time for filing a petition for writ of certiorari with the United States Supreme Court. *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008). In Martin's case, that date was March 8, 2012, ninety days after the TCCA refused his petition for discretionary review ("PDR"). Absent some form of tolling, the statute of limitations barred suit on March 8, 2013, three years and four months before Martin filed his federal habeas petition. Martin's state habeas petition, which he filed on July 21, 2015, did not toll limitations because he filed it after the federal limitations period had expired. *Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013). Martin acknowledges that, absent tolling, limitations had long since run when he filed this petition; but he argues that equitable tolling should apply because he was not able to obtain a trial transcript until May of 2015 despite writing multiple letters seeking one to the state trial court, his trial counsel, and a state appellate court over a three-year period beginning in 2012 (Dkt. 10 at pp. 2–5).[3] Martin also claims that his notes and legal research were confiscated on September 20, 2012 and never returned (Dkt. 10 at pp. 3, 5).

---

[3] In his petition, Martin also appeared to seek equitable tolling based on his ignorance of the law and his confinement in "administrative segregation with limited access to legal material" (Dkt. 1 at p. 13). In its show cause order, the Court pointed out that, on their own, ignorance of the law, temporary denial of access to legal materials due to confinement in administrative segregation, lack of knowledge of filing deadlines, and inadequacies of a prison law library are insufficient to warrant equitable tolling. *Boswell v. Claiborne Parish Detention Center*, 629 Fed. App'x 580, 582 (5th Cir. 2015); *see also Felder v. Johnson*, 204 F.3d 168, 171–73 (5th Cir. 2000). In his response to the show cause order, Martin has not elaborated on these particular arguments for equitable tolling.

## III. EQUITABLE TOLLING

A habeas petitioner is entitled to equitable tolling if he shows: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). The determination of whether equitable tolling is appropriate is, of course, governed by rules and precedent; but it often must be made on a case-by-case basis. *Id.* at 649–50. Courts must be mindful that "tolling is only available in exceptional circumstances." *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (quotation marks omitted). In explaining its decision to deny Martin's request for equitable tolling, the Court will consider the *Holland* prongs in reverse order.

### a. Extraordinary circumstances

To begin with, Martin has not shown the existence of extraordinary circumstances. The circumstance that Martin presses the hardest is his claim that he could not file a habeas petition without a trial transcript. The uniform view among the circuits is that, without more, "the unavailability of or delay in receiving transcripts is not enough to entitle a habeas petitioner to equitable tolling." *Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 750–51 (6th Cir. 2011); *see also Randolph v. Taylor*, 69 Fed. App'x 824, 2003 WL 21421712, at *1 (9th Cir. 2003); *Lloyd v. VanNatta*, 296 F.3d 630, 633–34 (7th Cir. 2002); *Donovan v. Maine*, 276 F.3d 87, 93 (1st Cir. 2002); *Jihad v. Hvass*, 267 F.3d 803, 806–07 (8th Cir. 2001); *Crawford v. Costello*, 27 Fed. App'x 57, 2001 WL 1485838, at *2 (2d Cir. 2001). Having to commence a habeas proceeding without a trial transcript is an obstacle "faced by many if not most habeas petitioners"

and is generally not considered an extraordinary circumstance that prevents timely filing. *Jihad*, 267 F.3d at 807; *see also Rodriguez v. Quarterman*, No. H-06-4001, 2007 WL 1746748, at *3 (S.D. Tex. June 15, 2007) ("Although it is understandable that Rodriguez would want his records, their absence would not have prevented him from filing a habeas petition and would not constitute adequate cause for failing to file a timely federal petition."); *Kiser v. Dretke*, No. 4:04-CV-494, 2004 WL 2331592, at *2 (N.D. Tex. Oct. 15, 2004), *adopted*, 2004 WL 2549174 (N.D. Tex. Nov. 9, 2004) ("Difficulty obtaining records and lack of money to pay for copies are common problems among inmates who are trying to pursue post-conviction habeas relief and, thus, do not present exceptional circumstances that warrant equitable tolling."). It is particularly hard to demonstrate that the lack of a transcript prevented timely filing if the transcript at issue documents a proceeding that the petitioner attended. Although mere notice pleading is not enough, the cases and applicable rules do not require a *pro se* habeas corpus petition to be pled with exhaustive particularity or to cite page and line to a transcript—the petitioner can simply describe what happened and explain how his or her Constitutional rights were violated. *See, e.g., Lloyd*, 296 F.3d at 633–34 ("Here, Mr. Lloyd was present at his trial and knew the basis on which he could have asserted prosecutorial misconduct; under these circumstances, a petitioner does not need a transcript to proceed with filing a habeas corpus petition."); *Donovan*, 276 F.3d at 93 ("In addition, the petitioner had attended the post-conviction evidentiary hearing and, thus, knew what had transpired at that session. Given the lack of any need for particularity, citation to the transcript was unnecessary in order to allege the grounds for federal habeas relief."); *Woulard v. Banks*, No. 5:08-CV-

204, 2009 WL 6970923, at *3 (S.D. Miss. Dec. 9, 2009), *adopted*, 2010 WL 4096229 (S.D. Miss. Oct. 18, 2010) ("Moreover, as Plaintiff was present at his trial, he certainly knew the factual basis on which his claim was based and, therefore, did not need a transcript or court records to file his petition."). If the petitioner thinks a transcript is necessary to aid the district court in deciding the petition, he or she may seek the district court's help in obtaining a transcript after filing the petition. *Lloyd*, 296 F.3d at 633–34.

Martin's petition presents no reason to deviate from the principles summarized above. As early as December of 2011—almost five years before he filed this habeas petition—Martin knew that he wanted to challenge the adequacy of his trial counsel's representation in a habeas proceeding (Dkt. 10 at p. 2). In this petition, Martin claims that his counsel failed to object to the continued seating of a juror who had become unfit to serve; failed to make a proper Rule 403 objection to evidence that Martin belonged to the Aryan Brotherhood; failed to challenge the State's forensic experts; failed to hire a forensic expert of his own; and ignored Martin's suggestion that his alleged victim could be impeached with evidence of heavy drug use (Dkt. 1 at pp. 6–11). Martin attended his trial and saw all of these things happen; and the waiver of the Rule 403 objection was also specifically mentioned in the opinion on direct appeal affirming Martin's conviction, which was issued five years before Martin filed this petition. *See Martin*, 2011 WL 2937423 at *4–5. That Martin did not realize the possible legal import of these events demonstrates ignorance of the law and not the existence of an impediment to his uncovering the pertinent facts. Ignorance of the law is not a basis for equitable tolling. *Felder v. Johnson*, 204 F.3d 168, 172–73 (5th Cir. 2000).

Martin also claims that his legal materials, including caselaw and notes, were confiscated in September of 2012 and never returned. These materials apparently represented nine months of Martin's own work on his case; Martin was represented by his attorney through the entirety of his direct appeal, including the PDR, and Martin evidently began representing himself when the TCCA refused his PDR in December of 2011 (Dkt. 10 at pp. 2, 5–6). After the confiscation of his research, Martin "started over" (Dkt. 10 at p. 6). The Court does not take the allegation of confiscation lightly, but under the circumstances the confiscation cannot save Martin's petition. Martin has repeatedly insisted in his show cause response that he thought he needed a trial transcript in order to file his petition. He did not obtain a transcript until 2015, nearly three years after the confiscation of his legal research. Given that three-year timespan, and given that Martin was going to wait until he obtained a trial transcript to file his habeas petition anyway, it is hard to see how the loss of nine months of legal research in 2012 had any effect on his ability to get his petition on file. Even if the research was crucial, Martin had three years to make up any lost ground. Indeed, Martin does not say that the loss of the research in 2012 stalled him in any meaningful way—as he himself emphasizes, the real reason for the untimely filing was his desire to obtain a trial transcript.

As mentioned earlier, in his habeas petition, Martin also appeared to seek equitable tolling based on his ignorance of the law and his confinement in "administrative segregation with limited access to legal material" (Dkt. 1 at p. 13). On their own, ignorance of the law, temporary denial of access to legal materials due to confinement in administrative segregation, lack of knowledge of filing deadlines, and inadequacies of a

prison law library are insufficient to warrant equitable tolling. *Boswell v. Claiborne Parish Detention Center*, 629 Fed. App'x 580, 582 (5th Cir. 2015); *see also Felder*, 204 F.3d at 171–73. As with the confiscation of his legal research, Martin does not explain how these factors delayed him, or for how long; and it is, again, clear that the real reason for the untimely filing was Martin's desire to obtain a trial transcript. As the Court previously explained, the lack of a trial transcript is not enough to entitle Martin to equitable tolling.

Martin has not pointed to any extraordinary circumstance that prevented him from filing this petition timely, much less a circumstance that kept him from filing it until three years and four months after limitations ran.

### b. Diligent pursuit

Regardless of whether extraordinary circumstances existed, Martin did not diligently pursue his rights. Although the *Holland* standard does not require the petitioner to show "maximum feasible diligence," *Holland*, 560 U.S. at 653 (quotation marks omitted), a petitioner hoping to obtain the benefit of equitable tolling undoubtedly has to move with at least some urgency, as courts will not equitably toll limitations for litigants who "sleep on their rights." *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (quotation marks omitted). With regard to this diligent-pursuit prong of the *Holland* standard, the Court will focus on one period of delay: the four and a half months that Martin waited to file this petition after the TCCA denied his state habeas petition. Martin provides no explanation for that four-and-a-half-month delay and, in fact, considers the length of that delay indicative of his diligence—he describes it as "only" four months

(Dkt. 10 at p. 6). The Fifth Circuit has held at least twice that a delay of four and a half months (or shorter) between the denial of state post-conviction relief and the filing of a federal habeas petition precluded a finding of the diligence necessary to obtain equitable tolling. *Koumjian v. Thaler*, 484 Fed. App'x 966, 969–70 (5th Cir. 2012) (four and a half months); *Melancon v Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001) (four months); *see also Coleman v Johnson*, 184 F.3d 398, 403 (5th Cir. 1999) (six months). The Court, in line with those cases, holds that Martin has not shown diligent pursuit of his rights.

The Court will deny Martin's request for equitable tolling. This petition is time-barred.

## IV. CERTIFICATE OF APPEALABILITY

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether

(or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment and ruling debatable or wrong. Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The habeas corpus petition is **DENIED**, and this case is **DISMISSED** with prejudice.

2. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, on January 18, 2018.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE